**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JANE DOE #1,

     Plaintiff,

v.                           Case No. 3:23-cv-383-MMH-JBT

CROWLEY MARITIME
CORPORATION and JUAN
EMILIO BLANCO,

     Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Crowley Maritime Corporation's Motion to Dismiss Plaintiff's Complaint and Motion to Strike (Doc. 16; Crowley's Motion), filed August 7, 2023, and Defendant Juan Emilio Blanco's Motion to Dismiss Counts I and III of Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 19; Blanco's Motion), filed August 7, 2023. In their respective motions, Defendants request that the Court dismiss Plaintiff Jane Doe #1's Sex Trafficking Complaint and Demand for Jury Trial (Doc. 1; Complaint) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). [1] Plaintiff timely filed responses to both motions. See

---

[1] Crowley also requests that the Court strike allegations in the Complaint pursuant to Rule 12(f). Crowley's Motion at 21. United States Magistrate Judge Joel B. Toomey construed Crowley's request as a motion to strike, and denied it without prejudice, subject to Crowley

Plaintiff's Response in Opposition to Crowley Maritime Corporation's Motion to Dismiss and Motion to Strike (Doc. 23; Response to Crowley's Motion), filed August 28, 2023; Plaintiff's Response in Opposition to Juan Emilio Blanco's Motion to Dismiss (Doc. 24; Response to Blanco's Motion), filed August 28, 2023. Accordingly, this matter is ripe for review.

## I.    Background[2]

Plaintiff began working for Crowley Maritime Corporation (Crowley) in October of 2016 when she was hired as an onboarding coordinator for the company's Inland Transportation Department in San Salvador, El Salvador. Complaint ¶¶ 6–9. Within her first month at Crowley, Plaintiff began to experience a pattern of extreme sexual harassment by Blanco, her direct supervisor. Id. ¶¶ 17, 33. The first instance of sexual harassment occurred when Blanco had a private meeting with Plaintiff and forced her to watch a "pornographic video of transexual males engaging in sex acts." Id. ¶¶ 40–42.

---

filing a motion to strike separate from its motion to dismiss. See Order (Doc. 27), filed September 6, 2023. Crowley then filed a separate motion to strike, see Defendant Crowley Maritime Corporation's Motion to Strike Allegations and Exhibits From Complaint (Doc. 33), filed September 27, 2023, which Judge Toomey denied. See Order (Doc. 35), filed October 31, 2023. Accordingly, the Court will not address Crowley's request to strike portions of the Complaint in this Order.

[2] In considering the Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

After this incident, Plaintiff no longer felt safe working at Crowley, and began looking for a new job. Id. ¶ 44. A week later, however, Blanco nominated Plaintiff for an award for "superior performance." Id. ¶ 45. And after receiving significant professional recognition for being nominated for this award, Plaintiff decided to continue working at Crowley. Id. ¶ 47.

Although Plaintiff remained at Crowley, Blanco's sexual harassment continued, and it "was rare that [Plaintiff] had any interaction with Blanco in which he did not say or do something sexually inappropriate." Id. ¶ 49. For example, in July of 2017, the Inland Transportation Department team gathered at the Crowley office cafeteria to celebrate Plaintiff's birthday. Id. ¶¶ 84–86. During this gathering, "Blanco looked directly into [Plaintiff's] eyes and told her he could picture the way her boyfriend 'f_ked' her inside [his] truck." Id. ¶ 86. "Blanco then began gyrating his hips and moving his body to imitate a sex act." Id. That same summer, at an Inland Transportation Department team dinner, Blanco told Plaintiff that "one day I'm going to get you drunk[.]" Id. ¶¶ 89–91 (emphasis in original). Plaintiff viewed this statement by Blanco as a sexual threat that signaled "his intent to get her intoxicated so he could force sex on her." Id. ¶¶ 91–92. These two incidents—along with Blanco's daily sexual harassment—renewed Plaintiff's fear of continuing to work at Crowley, and she once again started searching for a new job. Id. ¶ 93.

On July 26, 2017, Crowley announced that it had been awarded the Defense Freight Transportation Services (DFTS) contract by the United States Department of Defense. Id. ¶ 94.[3] The DFTS contract was a multi-billion dollar deal that would require Crowley to facilitate "large volumes of interstate commerce throughout the United States as well as international commerce between the United States and Canada on behalf of the U.S. military." Id. ¶¶ 78, 96. To implement this project, Crowley "intended for much of its work on the DFTS contract to be conducted from [its] offices in San Salvador, El Salvador." Id. ¶ 95. Accordingly, Blanco told the Inland Transportation Department team "that he would personally be choosing a few select team members to travel to Crowley headquarters in the United States with him for training on the implementation of the DFTS contract." Id. ¶ 97. Plaintiff viewed the chance of traveling to the United States to work on this contract as a "once-in-a-lifetime opportunity" and again "changed her mind about leaving Crowley and decided to stay at the company and vie for this valuable" position. Id. ¶ 101.

Although Plaintiff again decided to stay at Crowley, she continued to experience sexual harassment from Blanco, and decided to file an anonymous

---

[3] Crowley originally announced that it had been awarded the DFTS contract on November 28, 2016. Complaint ¶ 76. However, Crowley was not "definitively awarded" the DFTS contract until July of 2017 due to a "contested legal battle over the initial award of the DFTS contract[.]" Id. ¶ 94.

report against him using Crowley's EthicsPoint complaint system on November 7, 2017. See EthicsPoint Investigation 280 (Doc. 1-3; First EthicsPoint Investigation). Numerous Crowley executives in the United States received this complaint. Complaint ¶¶ 131, 133. Some of Blanco's misconduct described in the complaint included:

> Juan makes really offensive sexual comments at all time [sic] of the day about people in the team and people from other teams. He encourages this kind of behavior among the team and has made some instant messaging groups in which he gives nicknames to men and women in the company, which goes [sic] from "fuck face" to making really bad comments such as "I would love to f… that girl, I bet she is really good at....." and above. Juan is not accessible at all when being asked for help, when we ask him form [sic] help he never replies back or makes sarcastic comments such us "figure it out yourself" or he even makes obscene signs at us with his middle finger.

First EthicsPoint Investigation at 2.

Shortly after Plaintiff filed her EthicsPoint complaint, Blanco ordered her into his office for a one-on-one meeting. Complaint ¶ 123. During this meeting, Blanco told Plaintiff that he had personally selected her to travel with him to Jacksonville to work on the DFTS contract. Id. ¶ 124. To be able to work on the DFTS contract, "Blanco told [Plaintiff] that she would be required to obtain a travel visa—a process that Crowley would facilitate." Id. From Plaintiff's perspective, this "opportunity to work on a high-profile contract for the U.S. Department of Defense, to obtain a travel visa that would allow her to travel back and forth to the United States on business trips, and to actually visit the

United States for training were all enormously valuable career opportunities." Id. ¶ 126. Blanco's offer therefore represented "the most significant professional opportunity of her life." Id. That being said, Plaintiff was afraid to travel to Jacksonville with Blanco as "the prospect of going on an international business trip with a man she considered a sexual predator—a man who had subjected her to humiliating and pervasive sexual harassment, forced her to watch nonconsensual porn, and sexually threatened her—was utterly frightening." Id. ¶ 127. Although "painfully conflicted about the situation[,]" Plaintiff ultimately decided to accept Blanco's offer. Id.

In preparation of Plaintiff's trip to Jacksonville, Crowley arranged for her to receive a 10-year work and travel visa to the United States, something that "would have been impossible for [her] to obtain without Crowley's facilitation and financing of the visa application process." Id. ¶ 166. Crowley also arranged Plaintiff's travel to Jacksonville, and notified her that it would be paying for all of her "travel expenses, including airfare, transportation, meals, lodging, and training[.]" Id. ¶ 164. However, Plaintiff was still terrified about traveling with Blanco, and decided to express her concerns to Jaqueline Najera (Crowley's Human Resource Manager in El Salvador). Id. ¶ 168. During a meeting with Najera, Plaintiff told her that she did not feel comfortable traveling with Blanco because she was "scared that [Blanco] will try to do something to me in Jacksonville when I'm alone with him." Id. ¶ 172 (emphasis in original).

Plaintiff further explained "that her concerns about Blanco went beyond her fear that he might sexually attack her in Jacksonville" but "that she did not ever feel safe around him, in any place, including in the Crowley office." <u>Id.</u> ¶ 175. In response to these concerns, Najera told Plaintiff "that if she did not feel safe traveling with Blanco on the business trip, or feel safe being around Blanco in the office, she could find a new job." <u>Id.</u> ¶ 176. Due to Najera's response, "it was clear to [Plaintiff] that she did not have any choice other than to go on the business trip if she wanted to keep her job." <u>Id.</u> ¶ 178.

On January 7, 2018, Plaintiff travelled with Blanco to Jacksonville to work on the DFTS contract. <u>Id.</u> ¶ 201. Plaintiff flew from San Salvador, El Salvador to Jacksonville, Florida. <u>Id.</u> And while in Jacksonville, she stayed at a local hotel, one which "Crowley empowered Blanco to personally choose" for her. <u>Id.</u> ¶ 202. Throughout the DFTS trip, "Crowley had ensured that [Plaintiff] was totally dependent on Blanco and controlled by him[.]" <u>Id.</u> ¶ 204. Plaintiff was also instructed by Jose Lopez (Crowley's Inland Transportation Department Manager) to "<u>do whatever [Blanco] says.</u>" <u>Id.</u> ¶¶ 150, 203 (emphasis in original).

During the DFTS trip, Blanco invited Plaintiff and another Crowley employee to attend a dinner at his wife's home. <u>Id.</u> ¶¶ 207–208. Plaintiff initially refused because she "was terrified of drinking around Blanco" due to his previous threat to "get her drunk[.]" <u>Id.</u> ¶ 211. However, "Blanco insisted that she attend the dinner and repeatedly refused her requests that he drive

her back to her hotel." <u>Id.</u> ¶ 208. Because Lopez had instructed Plaintiff to "do whatever [Blanco] says[,]" she "felt pressured" to go to the dinner, and eventually agreed to attend. <u>Id.</u> While at the dinner, Blanco drank "large quantities of alcohol" and "became highly intoxicated." <u>Id.</u> ¶ 210. At some point, Plaintiff was left alone with Blanco. <u>Id.</u> ¶ 213. Once alone, Blanco began demanding that Plaintiff give him her phone so that he could see "the naked pictures you send your boyfriend." <u>Id.</u> ¶ 214. Plaintiff refused, but Blanco continued to insist. <u>Id.</u> ¶ 215. Suddenly, "Blanco lunged down toward [Plaintiff]" and "grabbed her and attempted to wrestle her phone away from her." <u>Id.</u> ¶ 218. Blanco then "pressed his crotch into [Plaintiff's] face, and [Plaintiff], in terror, struggled to stand up and fight him off." <u>Id.</u> Blanco then "pushed [Plaintiff] backward and pinned her up against a wall where he continued to attack [her], forcing his chest into her face and his crotch against her body while he groped and fondled her breasts and buttocks[.]" <u>Id.</u> ¶ 219. While attacking Plaintiff, Blanco told her that "<u>I'm your supervisor, and I can fuck anyone I want.</u>" <u>Id.</u> ¶ 220 (emphasis in original). Plaintiff believed that she was going to be "raped by Blanco." <u>Id.</u> ¶ 223. But before the attack could escalate any further, Blanco's wife suddenly appeared, and Blanco stopped assaulting Plaintiff. <u>Id.</u> ¶ 222.

After the attack, Plaintiff "was forced to spend the night at" the Blanco residence. <u>Id.</u> ¶ 224. Terrified that Blanco would attempt to assault her again,

Plaintiff "jammed a chair under the door handles" of the room she was staying in. Id. ¶ 226. That night, Blanco attempted to break into Plaintiff's room. Id. ¶ 227. But was prevented from doing so because Plaintiff had wedged the door shut. Id. The next morning, Plaintiff returned to her hotel. Id. ¶ 229.

During the remainder of the DFTS trip, Plaintiff was "on the verge of panic attacks[,]" and felt as though she was going to have "a heart attack." Id. ¶ 231. At the conclusion of the trip, Plaintiff "intentionally missed her flight to avoid traveling back to El Salvador with Blanco." Id. ¶ 233. Once back in El Salvador, Plaintiff submitted a second EthicsPoint complaint which described the events that had occurred in Jacksonville. Id. ¶ 243; see also EthicsPoint Investigation 297 (Doc. 1-9; Second EthicsPoint Investigation). Nine minutes after Plaintiff made this second complaint, Tiffany King (Crowley's Global HR Leader) forwarded Plaintiff's complaint to Senobia Matute (Crowley's HR Director for Central America). Complaint ¶ 244; see also TK Email – "We Cannot Afford Another Complaint About Juan" (Doc. 1-10; TK Email). King then emailed Matute and told her that "[w]e can't afford to have another complaint about Juan. It appears that we aren't taking the employee complaints serious." TK Email at 1. The next day, Crowley fired Blanco. Complaint ¶ 38.

Prior to Blanco being fired, Plaintiff alleges that Crowley was aware that he had a "longstanding pattern of workplace sexual misconduct." Id. ¶ 132. But Crowley facilitated "Blanco's repeated sexual abuse of its own female employees

while knowing that his attacks would and did continue" because it wanted to maximize its profits and protect its reputation and business relationships. Id. ¶ 306.

For example, Plaintiff alleges that Vanessa Treminio, another Crowley employee in the Inland Transportation Department, was raped by Blanco in Jacksonville while working on the DFTS contract. Id. ¶ 150. Treminio reported this assault to Arthur LaMoureaux (Crowley's Vice President of Ethics and Compliance). Id. ¶ 152. However, despite admitting that "Crowley's investigation was able to prove that Mrs. Treminio was telling the truth about being raped by Juan Emilio Blanco[,]" LaMoureaux took no action against Blanco, and kept Treminio's complaint confidential. Id. ¶¶ 153, 158 (emphasis omitted). Plaintiff alleges that she "could have easily been spared the horror of being trafficked . . . by a man Crowley had been repeatedly warned was a sexual predator." Id. ¶ 160. But that instead, Crowley "did nothing to prevent the sexual abuse [she] endured." Id.

Additionally, three weeks before Plaintiff was scheduled to travel to Jacksonville with Blanco, Plaintiff alleges that Crowley was in possession of a "highly disturbing draft investigation report" regarding Blanco's conduct. Id. at 47 (alterations omitted). Specifically, Plaintiff alleges that Matute had been investigating complaints against Blanco, and had compiled a report that outlined her findings. See SM to TK Email and Draft Blanco Investigation (Doc.

1-8; Draft Investigation). Matute then emailed this report to King, and explained that there were "evident problems" with Blanco, and that immediate action needed to be taken against him:

> There is an evident problem with Supervisor Juan Blanco. The comments that female personnel shared, are out of order and don't comply with our Crowley's [sic] values and culture . . . . Immediate actions need to be taken with Juan Emilio Blanco. He does not comply with the values that Crowley promote [sic].

Id. at 3 (emphasis omitted). Despite this warning, Crowley took no action against Blanco, and instead allowed Plaintiff to travel to Jacksonville with him. Complaint ¶ 199.

Plaintiff alleges that Crowley's failure to take action against Blanco was due to its systemic business practice of maximizing profits, and because it wanted to coverup Blanco's conduct so that it could protect its reputation and business relationships:

> Instead of taking action against Blanco or reporting him to law enforcement, Crowley, as a systematic business practice designed to maximize profits, either threatened Blanco's victims into silence, or fired them while continuing to employ Blanco, because he was a "star performer" who drove profits for Crowley, in order to protect the company's reputation and business relationships, and because Crowley saw Blanco's victims, all of whom were Salvadoran women, as powerless second-class corporate citizens who were without access to any legal recourse against the company's abusive labor practices. Despite Crowley's knowledge that Blanco was systematically preying on its female employees, Crowley continued to condone, enable, and facilitate Blanco's repeated sexual abuse of its own female employees while knowing that his attacks would and did continue.

Id. ¶ 306. As such, Plaintiff alleges that "Crowley had been repeatedly warned about . . . a man even Crowley's own HR Director had told the company was a sexual predator who presented an immediate danger to other Crowley employees." Id. ¶ 200 (emphasis in original). Yet, took no action to protect Plaintiff, or its employees, in an attempt to maximize its profits and to protect its reputation. Id. ¶ 306.

## II.   Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded

factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III.   Discussion

In the Complaint, Plaintiff asserts two claims against Blanco: (1) sex trafficking under 18 U.S.C. §§ 1591, 1595 and (2) sexual battery under state law. Complaint at 76, 94. Plaintiff also asserts one claim against Crowley for sex trafficking under 18 U.S.C. §§ 1591, 1595. Id. at 81. Blanco argues that the claims against him should be dismissed because Plaintiff has failed to state a

claim for sex trafficking, and because her sexual battery claim is barred by the applicable statute of limitations. Blanco's Motion at 4, 8. Plaintiff contends that she has sufficiently pled a claim for sex trafficking, and that the statute of limitations for her sexual battery claim has been tolled. Response to Blanco's Motion at 7, 14. For its part, Crowley argues that the claim brought against it should be dismissed because Plaintiff has failed to state a claim for sex trafficking. Crowley's Motion at 5. In the alternative, Crowley contends that the Complaint should be dismissed as an improper shotgun pleading. Id. at 19. Plaintiff counters that she has sufficiently pled a claim for sex trafficking, and that the Complaint is not a shotgun. Response to Crowley's Motion at 8, 17. Upon review of the Complaint, the parties' arguments, and the applicable law, the Court finds that the Motions are due to be denied.

## A. Crowley's Motion

In Count II, Plaintiff brings a claim against Crowley for sex trafficking in violation of 18 U.S.C. §§ 1591, 1595. Complaint at 81. Specifically, Plaintiff alleges that Crowley is liable as a (1) perpetrator of sex trafficking and (2) as a beneficiary of sex trafficking. Id. at 82, 90. Before addressing the merits of Crowley's arguments, a brief overview of the applicable law is in order.

18 U.S.C. § 1591, known as the Trafficking Victims Protection Reauthorization Act (TVPRA), "prohibits the sex trafficking of children or adults by force, fraud, or coercion." Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714,

723 (11th Cir. 2021); 18 U.S.C. § 1591(a).[4] Although the TVPRA provides criminal penalties for sex trafficking, in § 1595 it also provides a civil remedy for sex trafficking victims:

> An individual who is a victim of a violation of [the TVPRA] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]).

18 U.S.C. § 1595(a); see also Noble v. Weinstein, 335 F. Supp. 3d 504, 514–15 (S.D.N.Y. 2018).[5] Pursuant to § 1595, a sex trafficking victim may bring a civil action to hold liable "[1] the perpetrator of a violation [of the TVPRA]; and . . . [2] anyone who knowingly benefits from participation in a venture that engaged

---

[4] Section 1591(a) reads in relevant part that:

   (a)  Whoever knowingly—

      (1)  in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

      (2)  benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

      knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . . shall be punished[.]

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

in a violation [of the TVPRA]." <u>Doe v. Fitzgerald</u>, No. CV20-10713-MWF-RAOX, 2022 WL 2784805, at *3 (C.D. Cal. May 13, 2022); <u>A.D. v. Holistic Health Healing Inc.</u>, No. 2:22-cv-641-JES-NPM, 2023 WL 2242507, at *2 (M.D. Fla. Feb. 27, 2023) ("[A] sex-trafficking victim may not only sue a sex-trafficking perpetrator for civil liability through a private right of action but may also seek to hold liable 'whoever knowingly benefits . . . from participation in a venture . . . in violation of [the TVPRA].")." These two liability theories are commonly referred to as (1) perpetrator liability and (2) beneficiary or venture liability. <u>See</u> <u>Doe #1 v. MG Freesites, LTD</u>, No. 7:21-cv-00220-LSC, 2022 WL 407147, at *7 (N.D. Ala. Feb. 9, 2022); <u>Doe #1 v. MG Freesites, LTD</u>, 676 F. Supp. 3d 1136 (N.D. Ala. 2022).[6] As each theory of liability requires proof of different elements, the Court will analyze them separately.

### 1. Perpetrator Liability

Plaintiff alleges that Crowley is liable under the TVPRA as a perpetrator of sex trafficking. Complaint at 82. Crowley argues that Plaintiff has failed to state a claim for perpetrator liability, and that Count II should therefore be dismissed. Crowley's Motion at 5. To state a claim for perpetrator liability, Plaintiff must allege that Crowley "(1) recruited, enticed, harbored,

---

[6] Some courts use "perpetrator liability" and "direct liability" synonymously to describe the first method of liability under the TVPRA. For consistency, the Court will use the term "perpetrator liability" throughout this Order.

transported, provided, obtained, or maintained [her]; (2) knowing that force, threats of force, coercion, or any combination of such means would be used; (3) to cause [her] to engage in a commercial sex act." United States v. Bixler, No. 21-5194, 2022 WL 247740, at *7 (6th Cir. Jan. 27, 2022); see also Noble, 335 F. Supp. 3d at 515; 18 U.S.C. § 1591(a).

As to the first element, Plaintiff must allege that Crowley recruited, enticed, harbored, transported, provided, obtained, or maintained her. See 18 U.S.C. § 1591(a). Crowley does not argue that Plaintiff has failed to allege sufficient facts to satisfy this element. Nonetheless, the Court independently concludes that Plaintiff has pled facts sufficient to make this showing. In the Complaint, Plaintiff alleges that Crowley recruited her to travel "from San Salvador, El Salvador to Jacksonville, Florida for an Official Crowley business trip that involved training on the Defense Freight Transportation Services (DFTS) contract." Complaint ¶ 303. Crowley enticed Plaintiff to work on the DFTS contract by promising her a work visa to the United States, along with other valuable career opportunities and benefits. Id. ¶ 126. Crowley then facilitated Plaintiff's transportation to Jacksonville by paying for her "travel expenses, including airfare, transportation, meals, lodging, and training[.]" Id. ¶ 164. Based upon these allegations, Plaintiff has plausibly alleged that

Crowley recruited, enticed, maintained, and transported her within the meaning of 18 U.S.C. § 1591(a).[7]

As to the second element, Plaintiff must allege that Crowley <u>knew</u> that force, threats of force, or coercion would be used against her while in Jacksonville. <u>See</u> 18 U.S.C. 1591(a) (emphasis added). Under 18 U.S.C. § 1591, knowledge can be established through either actual knowledge or constructive knowledge. <u>See</u> <u>Red Roof Inns</u>, 21 F.4th at 725. Actual "[k]nowledge requires '[a]n awareness or understanding of a fact or circumstance.'" <u>Id.</u> (quoting <u>Knowledge</u>, Black's Law Dictionary (11th ed. 2019)). Whereas "[c]onstructive knowledge . . . is that knowledge which 'one using reasonable care or diligence should have.'" <u>Id.</u> (quoting <u>Constructive Knowledge</u>, Black's Law Dictionary (11th ed. 2019)). Additionally, although not yet endorsed by the Eleventh Circuit, other courts have found that "[o]ne way of pleading this knowledge is by alleging that Defendant engaged in a <u>modus operandi</u>, such that he knew that he had a pattern of using fraud or force to cause commercial sex acts with the victims." <u>Ardolf v. Weber</u>, 332 F.R.D. 467, 475 (S.D.N.Y. 2019); <u>see also</u> <u>United States v. Todd</u>, 627 F.3d 329, 334 (9th Cir. 2010) ("What the [TVPRA] requires is that the defendant know in the sense of being aware of an

---

[7] The Court notes that nothing in this Order should be viewed as foreclosing Plaintiff from pursuing her claim that Crowley also harbored, provided, obtained, advertised, patronized, or solicited her within the meaning of 18 U.S.C. § 1591(a).

established modus operandi that will in the future cause a person to engage in prostitution."); <u>Treminio v. Crowley Mar. Corp.</u>, No. 3:22-cv-00174-CRK-PDB, 2023 WL 8627761, at *8 (M.D. Fla. Dec. 13, 2023). Accordingly, a plaintiff may satisfy the knowledge requirement by showing that a defendant had knowledge that force, threats of force, or coercion would be used by alleging actual knowledge, constructive knowledge, or that the defendant had a <u>modus operandi</u>.

Here, Plaintiff alleges that Crowley had actual or constructive knowledge that Blanco "was a sexual predator who had sexually harassed and abused numerous female Crowley employees . . . while transporting [them] on Crowley-sponsored international business trips." Complaint ¶ 304. For example, Plaintiff alleges that "Crowley allowed Blanco to personally select [her] to accompany him on an upcoming DFTS training trip to Jacksonville, Florida" when "Crowley knew that only days earlier, Crowley employee Vanessa Treminio had reported to Crowley . . . that Blanco had raped her in her Jacksonville hotel during a DFTS training trip[.]" <u>Id.</u> ¶ 307. Despite knowledge of Treminio's assault, Plaintiff alleges that Crowley "continued to condone, enable, and facilitate Blanco's repeated sexual abuse of its own female employees while knowing that his attacks would and did continue" because "[Blanco] was a 'star performer' who drove profits for" the company. <u>Id.</u> ¶ 306.

Based on these allegations, Plaintiff plausibly asserts that Crowley had (at the very least) constructive knowledge that force, threats of force, or coercion would be used against Plaintiff when she travelled to Jacksonville with Blanco to work on the DFTS contract. Moreover, these allegations support a plausible inference that Crowley was aware that Blanco had a modus operandi of selecting female Crowley employees to travel with him to Jacksonville to work on the DFTS contract, and that Blanco used these trips as an opportunity to sexually assault these employees. For these reasons, Plaintiff has sufficiently alleged that Crowley had knowledge that force, threats of force, or coercion would be used against her within the meaning of 18 U.S.C. § 1591(a).

As to the third element, Plaintiff must allege that she was caused to engage in a commercial sex act with Blanco while in Jacksonville. See 18 U.S.C. § 1591(a). Under the TVPRA, a "'[c]ommercial sex act' is defined in Section 1591(e)(3) as 'any sex act, on account of which anything of value is given to or received by any person.'" Noble, 335 F. Supp. 3d at 520 (citing 18 U.S.C. § 1591(e)(3)). "The statute's use of the term 'anything of value' has been construed broadly to not require a monetary or financial aspect." Treminio, 2023 WL 8627761 at *8 (citing United States v. Nilsen, 967 F.2d 539, 542 (11th Cir. 1992)); see also United States v. Raniere, 55 F.4th 354, 362 (2d Cir. 2022). However, there must be "a causal relationship between the 'anything of value'

and the sex act to constitute a commercial sex act under the TVPRA." <u>Treminio</u>, 2023 WL 8627761 at *8.

Here, Plaintiff alleges that she received the following in exchange for going on the DFTS trip with Blanco:

> 1) [A] Crowley-sponsored 10-year U.S. travel visa that allowed her to travel back and forth to the United States, and which made her more attractive to employers in El Salvador who also had offices or headquarters in the United States; 2) round-trip travel to the United States, hotel accommodations, and meals; 3) valuable training on a large U.S. Department of Defense logistics contract (DFTS); 4) valuable professional connections with senior employees at her company's headquarters in Jacksonville; 5) tangible job benefits, including continued employment with Crowley, which included her salary and other employment benefits, and the possibility of valuable career advancement within Crowley, which in fact materialized in the years following Plaintiff's sexual assault in Jacksonville when Plaintiff was promoted to manager, and then later to analyst.

Response to Crowley's Motion at 9–10; Complaint ¶¶ 293–95. Crowley argues that these allegations are "conclusory," and that they do not show that Plaintiff's "employment was predicated upon acquiescence of sexual acts with Blanco." Crowley's Motion at 7. Thus, Crowley contends that Plaintiff has failed to allege that these "things of value" were "on account of, or causally related to, an alleged sexual act with Blanco." <u>Id.</u> at 10 (alterations omitted). And that Plaintiff has therefore failed to allege that a commercial sex act occurred. <u>Id.</u> This argument is unavailing.

Plaintiff alleges that she told Najera that she was afraid to travel to Jacksonville with Blanco:

> I am afraid to travel with Juan to Jacksonville, because he has always been highly inappropriate with me and with the team in general, and I am scared that he will try to do something to me in Jacksonville when I'm alone with him.

Complaint ¶ 172 (emphasis omitted). According to Plaintiff, she "explicitly told Najera that her concerns about Blanco went beyond her fear that he might sexually attack her in Jacksonville" but "that she did not ever feel safe around him, in any place, including the Crowley office." Id. ¶ 175. In response, Najera told Plaintiff that "if she did not feel safe traveling with Blanco on the business trip, or feel safe being around Blanco in the office, she could find a new job." Id. ¶ 176. Due to Najera's response, "it was clear to [Plaintiff] that she did not have any choice other than to go on the business trip if she wanted to keep her job." Id. ¶ 178. These allegations raise a reasonable inference that Plaintiff's continued employment with Crowley was a "thing of value," and that it was dependent upon her traveling with Blanco to Jacksonville. See David v. Weinstein Co. LLC, 431 F. Supp. 3d 290, 303–304 (S.D.N.Y. 2019) (finding that a career opportunity was a thing of value).

Additionally, Lopez told Plaintiff to "do whatever [Blanco] says" while in Jacksonville. Complaint ¶ 203 (emphasis omitted). Because of Lopez's directive, Plaintiff "felt pressured" to attend the dinner at the Blanco residence even

though she was "terrified of drinking around Blanco" due to his previous sexual threat to "get her drunk[.]" Id. ¶¶ 208, 211. This allegation supports a reasonable inference that Plaintiff's continued employment with Crowley was dependent upon her acquiescing to any sexual advances made by Blanco.

Taken together, these allegations plausibly assert that due to Plaintiff's interactions with Najera and Lopez her continued employment with Crowley was dependent upon her traveling to Jacksonville, and acquiescing to any sexual advances made by Blanco while there. This is sufficient to raise a reasonable inference that Plaintiff's continued employment was on account of, or causally related to, her alleged sexual assault. See Treminio v. Crowley Mar. Corp., 649 F. Supp. 3d 1223, 1231 (M.D. Fla. 2023) ("Blanco's alleged plan to use a business opportunity to lure [Plaintiff] into a vulnerable position where he could sexually assault her raises a reasonable inference that the things of value were received on account of the sex act."). Thus, Plaintiff has sufficiently alleged a commercial sex act within the meaning of 18 U.S.C. § 1591(a).

In sum, Plaintiff has plausibly alleged that Crowley recruited, enticed, maintained, and transported her to Jacksonville for the purpose of working on the DFTS contract; that Crowley had constructive knowledge that Blanco would use this trip to sexually assault Plaintiff, or was aware of Blanco's modus operandi of using these trips to sexually assault female Crowley employees; and that during this trip, Crowley caused Plaintiff to engage in a commercial sex

act. Accordingly, Plaintiff has sufficiently pled all elements of her perpetrator liability theory under 18 U.S.C. §§ 1591, 1595.

### 2. Beneficiary or Venture Liability

Plaintiff also alleges that Crowley is liable under the TVPRA as a beneficiary of sex trafficking. Complaint at 90. To state a claim for beneficiary or venture liability a plaintiff must allege that:

> [T]he defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

Red Roof Inns, 21 F.4th at 726. Here, Crowley argues that Plaintiff has failed to allege that it: (1) participated in a venture, (2) knowingly benefited from its alleged participation in a venture, (3) that this venture violated the TVPRA as to Plaintiff, and (4) that it had actual or constructive knowledge that Plaintiff would be sex trafficked by Blanco. Crowley's Motion at 12–16. According to Crowley, Plaintiff has failed to state a claim for beneficiary or venture liability. Id. at 12. And, as such, Count II should be dismissed. Id. The Court will address each of Crowley's arguments in turn.

First, Crowley argues that Plaintiff has failed to allege that it participated in a venture. Crowley's Motion at 12. Under 18 U.S.C. § 1595(a), a plaintiff may bring a civil action against "whoever knowingly benefits . . . from

participation in a <u>venture</u> which that person knew or should have known has engaged in an act in violation of [the TVPRA.]" <u>Id.</u> (emphasis added). Notably, the "text of Section 1595 does not say 'sex-trafficking venture,' but only 'venture.' In other words, 'venture' is not described in criminal terms." <u>G.G. v. Salesforce.com, Inc.</u>, 76 F.4th 544, 553–54 (7th Cir. 2023) (internal citation omitted). Instead, "the alleged venture can be a '<u>commercial</u> venture' like running or expanding a business." <u>Id.</u> at 554 (quoting <u>Red Roof Inns</u>, 21 F.4th at 727) (alterations omitted). And this includes "the 'growth,' 'expansion,' and profitability of that business." <u>Id.</u> at 554. "In short, to participate in a venture under Section 1595(a)," a defendant must have merely taken "part in a common undertaking involving risk or profit." <u>Red Roof Inns</u>, 21 F.4th at 727.

Here, Plaintiff alleges that the venture Crowley engaged in was the DFTS contract, and Crowley's employment of Blanco to facilitate this contract:

> By employing Blanco for years and promoting him to an important role in the company where he was responsible for managing a large team of Crowley employees and responsible for the implementation of key parts of a multi-billion-dollar contract with the U.S. Department of Defense, Defendant Crowley and Defendant Blanco <u>were participants in a common undertaking or enterprise that involved risk and potential profit.</u>

Complaint ¶ 324 (emphasis added). Crowley contends that this allegation is insufficient as "Blanco's employment was not 'an enterprise involving risk or potential profit[.]'" Crowley's Motion at 13. This argument fails. Plaintiff alleges that the DFTS contract "had a value of $2.3 billion[.]" Complaint ¶ 78. To

facilitate this contract, Crowley hired non-American employees and paid these "workers only 10–20% of what the company would have been required to pay similarly skilled and qualified workers in the United States." Id. ¶ 22. On its face, the DFTS contract is a common undertaking involving risks and potential profits as it was designed to grow and expand the profitability of Crowley's business. See Salesforce.com, 76 F. 4th at 554; Red Roof Inns, 21 F.4th at 727.

Additionally, Plaintiff alleges that "[i]nstead of taking action against Blanco . . . Crowley, as a systematic business practice designed to maximize profits . . . continu[ed] to employ Blanco, because he was a 'star performer' who drove profits[.]" Complaint ¶ 306. Plaintiff further alleges that Crowley engaged in a coverup of Blanco's misconduct in an attempt to "protect the company's reputation and business relationships[.]" Id. ¶¶ 306, 314. Given Plaintiff's allegations that Crowley decided to continue employing Blanco, and covered up his alleged sexual misconduct, and that it was motivated to do so by the desire to protect Crowley's reputation and ensure that the profits from the DFTS contract remained flowing, she has plausibly alleged the existence of a common undertaking involving risks and potential profits. For these reasons, the Court finds that Plaintiff has sufficiently alleged that Crowley engaged in a "venture" within the meaning of 18 U.S.C. § 1595.

Second, Crowley argues that Plaintiff has failed to allege that it knowingly benefited from its alleged participation in a venture. Crowley's

Motion at 14. Under 18 U.S.C. § 1595(a), an individual may hold civilly liable "whoever <u>knowingly benefits</u>, or attempts to conspire to benefit, <u>financially or by receiving anything of value</u> from participation in a venture[.]" <u>Id.</u> (emphasis added). To obtain relief under this provision, all a plaintiff must allege is "that the defendant knew it was receiving some value from participating in the alleged venture." <u>Red Roof Inns</u>, 21 F. 4th at 724. Here, Plaintiff identifies the DFTS contract, and Crowley's employment of Blanco to facilitate this contract, as the alleged venture. Thus, Plaintiff must plausibly allege that Crowley knew that it would receive some value from its participation in this venture. Plaintiff has met this burden. Notably, Plaintiff alleges that the DFTS contract was "a multi-billion-dollar contract with the U.S. Department of Defense[.]" Complaint ¶ 324. It is certainly plausible to infer that Crowley would have been aware that it would receive some sort of financial value from this arrangement. Additionally, Plaintiff alleges that Crowley employed Blanco to facilitate the DFTS contract, and refused to take any action against him despite knowing about his pattern of sexual misconduct because he was a "star performer" and it wanted to maximize its profits and protect its reputation. <u>Id.</u> ¶ 306. Through these allegations, Plaintiff plausibly asserts that Crowley knowingly received a financial benefit from employing Blanco to work on the DFTS contract, and that Crowley received the intangible benefit of protecting its reputation and business relationships by covering up Blanco's sexual misconduct. For these

reasons, Plaintiff has sufficiently alleged that Crowley knowingly received value from its participation in a venture. See 18 U.S.C. § 1595.

Third, Crowley argues that Plaintiff has failed to allege a violation of the TVPRA. Crowley's Motion at 16. Under 18 U.S.C. § 1595, a plaintiff must allege that the "undertaking or enterprise violated the TVPRA as to the plaintiff[.]" Red Roof Inns, 21 F.4th at 726. In other words, since "Plaintiff specifically alleges that she was trafficked in violation of § 1591(a) . . . Plaintiff must therefore plead sufficient facts to plausibly allege that the venture in which Defendant participated committed [this] crime against her." G.W. v. Northbrook Indus., Inc., No. 1:20-cv-05232-JPB, 2022 WL 1644923, at *3 (N.D. Ga. May 24, 2022). As the Court has already found that Plaintiff has sufficiently alleged her perpetrator liability theory against Crowley under § 1591, the Court necessarily finds that Plaintiff has plausibly alleged that Crowley's venture violated the TVPRA as to Plaintiff. Thus, Plaintiff has plausibly alleged a violation of the TVPRA as required by 18 U.S.C. § 1595.

Fourth, Crowley argues that Plaintiff has failed to allege that it had actual or constructive knowledge that Plaintiff would be sex trafficked by Blanco. Crowley's Motion at 16. Under 18 U.S.C. § 1595, a plaintiff must allege that the defendant had "either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefitted—violated the TVPRA as to the plaintiff." Red Roof Inns, 21 F. 4th at

725. As noted above, actual "[k]nowledge requires '[a]n awareness or understanding of a fact or circumstance.'" Id. (citing Knowledge, Black's Law Dictionary (11th ed. 2019)). Whereas "[c]onstructive knowledge . . . is that knowledge which 'one using reasonable care or diligence should have.'" Id. (quoting Constructive Knowledge, Black's Law Dictionary (11th ed. 2019)). Here, Plaintiff specifically alleges that Crowley "actually knew and should have known that its undertaking or enterprise with Blanco would violate the TVPA[.]" Complaint ¶ 327 (emphasis in original). Nevertheless, Crowley contends that Plaintiff's factual allegations are insufficient to have "put [it] on notice such that it knew or should have known that Plaintiff would be sex trafficked by Blanco." Crowley's Motion at 18 (emphasis omitted). However, the timeline of Plaintiff's factual allegations raises a reasonable inference that Crowley had, at the very least, constructive knowledge that Plaintiff would be sex trafficked.

For starters, Plaintiff alleges that she was sexually assaulted by Blanco on January 12, 2018. Complaint ¶ 242. Before this alleged assault occurred, Plaintiff made an anonymous EthicsPoint complaint alerting Crowley executives about Blanco's pattern of inappropriate sexual behavior. See generally First EthicsPoint Investigation; Complaint ¶¶ 131, 133. In December 2017, after being selected to work on the DFTS contract by Blanco, Plaintiff met with Najera (Crowley's HR Manager in El Salvador). Complaint ¶ 175. During

this meeting, Plaintiff expressed her concern that Blanco would attempt to sexually assault her while in Jacksonville. Id. In response, Najera told Plaintiff that if she did not feel safe around Blanco "she could find a new job." Id. ¶ 176. Then, on December 20, 2017, Matute (Crowley's HR Director for Central America) emailed an investigative report regarding Blanco to King (Crowley's Global HR Leader). See generally Draft Blanco Investigation. In this report, Matute warned King of Blanco's inappropriate sexual behavior, and stated that there "is an evident problem with Supervisor Juan Blanco." Id. at 3. And that "[i]mmediate actions need to be taken with Juan Emilio Blanco" as he "does not comply with the values that Crowley promote [sic]." Id. (emphasis omitted). After this report, around December 30, 2017, LaMoureaux (Crowley's Vice President of Ethics and Compliance) became aware of Treminio's allegation that Blanco had raped her during a trip to Jacksonville while working on the DFTS contract. Complaint ¶ 158. Despite admitting that "Crowley's investigation was able to prove that Mrs. Treminio was telling the truth about being raped by Juan Emilio Blanco[,]" LaMoureaux took no action against Blanco, and kept Treminio's complaint confidential. Id. ¶¶ 153, 158 (emphasis omitted). Then, in January 2018, Plaintiff travelled to Jacksonville with Blanco where he assaulted her. Id. ¶ 149. After the assault in Jacksonville, Plaintiff filed a Second EthicsPoint Complaint against Blanco. See generally Second EthicsPoint Investigation. In response to this complaint, King emailed Matute

that "[w]e can't afford to have another complaint about Juan. It appears that we aren't taking the employee complaints serious." TK Email at 1. It was only after Plaintiff's second complaint that Crowley decided to fire Blanco. Complaint ¶ 19.

Taking these allegations as true (as the Court must) Plaintiff has plausibly alleged that Crowley had at least constructive and perhaps even actual knowledge that she would be sex trafficked by Blanco when traveling to Jacksonville to work on the DFTS contract. Specifically, Crowley was aware that Blanco had been engaging in a pattern of sexual misconduct, and knew that he had allegedly raped a Crowley employee in Jacksonville while working on the DFTS contract. Despite this knowledge, Crowley took no action against Blanco, and allowed him to personally select Plaintiff to travel with him to Jacksonville. As Plaintiff notes, "[o]ne using reasonable care or diligence would not have allowed Blanco to recruit and transport Plaintiff on the [DFTS] trip out of concern that Blanco posed a danger[.]" Response to Crowley's Motion at 14. Yet, this is exactly what Crowley allegedly did. For these reasons, Plaintiff has plausibly alleged that Crowley had actual or constructive knowledge that she would be sex trafficked within the meaning of 18 U.S.C. § 1595.

In sum, Plaintiff has sufficiently alleged that Crowley participated in a venture, knowingly benefited from its participation in this venture, that this venture violated the TVPRA as to Plaintiff, and that Crowley had actual or

constructive knowledge that this venture violated the TVPRA as to Plaintiff. See 18 U.S.C. §§ 1591, 1595. Accordingly, Plaintiff has sufficiently pled her beneficiary or venture liability theory against Crowley.

### 3. Shotgun Pleading

The Court next addresses Crowley's contention that Plaintiff's Complaint should be dismissed because it is an improper shotgun pleading. Crowley's Motion at 19. In support of this, Crowley makes two arguments. First, Crowley contends that the "Complaint mixes allegations unrelated to Plaintiff's claims" and contains allegations that "make it unclear which defendant is allegedly liable for which alleged conduct." Id. at 20. This argument is unavailing. As the Eleventh Circuit has explained, a Complaint is a shotgun pleading when it commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[.]" Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). Here, although Plaintiff's Complaint is lengthy—spanning 95 pages and 335 paragraphs—it lays out one claim against Crowley, albeit based on alternative theories, and two claims against Blanco, and articulates the specific facts that support each cause of action. Moreover, Crowley has failed to provide the Court with any examples from the Complaint which support the contention that it is "unclear which defendant is allegedly liable for which

alleged conduct." Crowley's Motion at 20. As such, the Court will not dismiss Plaintiff's Complaint as a shotgun on this basis.

Second, Crowley argues that because Count II contains a claim for perpetrator liability <u>and</u> beneficiary liability that these "different claims and theories of liability require different burdens of proof and different elements for establishing liability[,]" and must therefore "be pled in separate counts[.]" <u>Id.</u> at 21. As explained by the Eleventh Circuit, a Complaint is a shotgun pleading when it "commits the sin of not separating into a different count each cause of action or claim for relief." <u>Weiland</u>, 792 F.3d at 1322–23. In Count II, Plaintiff has brought one claim for sex trafficking under 18 U.S.C. § 1591 and § 1595 against Crowley. Within Count II, Plaintiff has pled two theories of liability: (1) perpetrator liability and (2) beneficiary or venture liability. Although it may have been clearer if Plaintiff pled these two theories of liability in separate counts, this failure does not warrant dismissal as Crowley has been able to ascertain these two separate theories of liability, and adequately respond to each one. <u>See</u> <u>id.</u> at 1324 ("[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."). As such, the Court will not dismiss Plaintiff's Complaint as a shotgun on this basis.

Plaintiff has alleged a plausible claim that Crowley is liable under the TVPRA as a perpetrator or beneficiary of sex trafficking. And Crowley has failed to persuade the Court that Plaintiff's Complaint should be dismissed on the basis that it is a shotgun pleading. Accordingly, Crowley's Motion is due to be denied.

### B. Blanco's Motion

In Count I of her Complaint, Plaintiff asserts a claim for sex trafficking against Blanco under 18 U.S.C. §§ 1591, 1595, and in Count III she asserts a claim of sexual battery under Florida law. Complaint at 76, 94. Blanco moves to dismiss Count I, arguing that Plaintiff has failed to state a claim for sex trafficking under the TVPRA, and Blanco moves to dismiss Count III, contending that Plaintiff's state law sexual battery claim is barred by the applicable statute of limitations. Blanco's Motion at 4, 8. The Court will address each argument in turn.

#### 1. Count I – Sex Trafficking

In Count I, Plaintiff alleges that Blanco "knowingly . . . did recruit, entice, solicit, or transport [her] knowing that means of force, threats of force, fraud, or coercion . . . would be used to cause [her] to engage in any sex act on account of which anything of value would be given to or received by any person." Complaint ¶ 283. In doing so, Plaintiff asserts that Blanco is liable under the TVPRA as a perpetrator of sex trafficking. As noted earlier, to sufficiently plead

this claim Plaintiff must allege that Blanco "(1) recruited, enticed, harbored, transported, provided, obtained, or maintained [her]; (2) knowing that force, threats of force, coercion, or any combination of such means would be used; (3) to cause [her] to engage in a commercial sex act." Bixler, 2022 WL 247740, at *7; see also Noble, 335 F. Supp. 3d at 515; 18 U.S.C. § 1591(a). Blanco contends that Plaintiff has failed to allege each element. Blanco's Motion at 5.

As to the first element, Blanco argues that Plaintiff has failed to allege that he "enticed, solicited, recruited, [or] transported" her. Id. The Court finds this argument to be unavailing. In the Complaint, Plaintiff alleges that Blanco recruited her to work on the DFTS contract when he "personally selected [her] for the trip to Jacksonville[.]" Complaint ¶ 286. Blanco enticed Plaintiff to travel with him to Jacksonville by telling her that "she would be required to obtain a travel visa—a process that Crowley would facilitate." Id. ¶ 124. And something which was "enormously valuable" to Plaintiff. Id. ¶ 126. Blanco then facilitated Plaintiff's transportation to Jacksonville by "personally choos[ing] the hotel" where she would be staying. Id. ¶ 202. Taking these allegations as true, Plaintiff has plausibly alleged that Blanco recruited, enticed, and transported her within the meaning of 18 U.S.C. § 1591(a).[8]

---

[8] The Court again notes that nothing in this Order should be viewed as foreclosing Plaintiff from pursuing her claim that Blanco also harbored, provided, obtained, advertised, maintained, patronized, or solicited her within the meaning of 18 U.S.C. § 1591(a).

As to the second element, Blanco argues that "Plaintiff has not alleged <u>facts</u> to establish [his] knowledge or his 'awareness, at the initial recruitment stage, that certain prohibited means [would] be employed to achieve a perverse end goal: a commercial sex act.'" Blanco's Motion at 5 (quoting <u>Ardolf</u>, 332 F.R.D. at 475). According to Blanco, "Plaintiff merely makes repeated conclusory allegations that [he] engaged in conduct '<u>knowingly</u>' or '<u>knowing</u>' that he would use force or threats of force against Plaintiff." <u>Id.</u> (citing Complaint ¶¶ 285, 287, 288, 292). This argument is also unavailing. Again, to state a claim under the TVPRA, a plaintiff is required "to plausibly allege that Defendant enticed [her] <u>knowing</u> that he would use fraud or force to cause a commercial sex act to take place." <u>Ardolf</u>, 332 F.R.D. at 475 (citing <u>Noble</u>, 335 F. Supp. 3d at 517–18) (emphasis added)). "One way of pleading this knowledge is by alleging that Defendant engaged in a <u>modus operandi</u>, such that he knew that he had a pattern of using fraud or force to cause commercial sex acts with victims." <u>Id.</u>

On this issue, Plaintiff argues that "Blanco engaged in a <u>modus operandi</u> of selecting subordinate women to travel on business trips to Jacksonville with him, so he could assault them." Response to Blanco's Motion at 13 (citing Complaint ¶¶ 123–24). In support of this contention, Plaintiff points to her allegations that "only days after allegedly raping Inland Department team member Vanessa Treminio in Jacksonville, Florida on a DFTS training trip,

Blanco . . . selected [Plaintiff] to travel with him to Jacksonville, Florida for DFTS training[.]" Complaint ¶¶ 123–24. These allegations raise a reasonable inference that Blanco had a <u>modus operandi</u> of selecting subordinate women to travel with him on DFTS training trips so that he could sexually assault them. This alleged pattern of behavior, if proven, could be enough to establish knowledge under the TVPRA. <u>See</u> <u>United States v. Townsend</u>, 521 F. App'x 904, 907 (11th Cir. 2013) ("The jury could infer from [the defendant's] prior use of force that he intended, and therefore knew, that he would use it to make [the plaintiff] engage in commercial sex.");[9] <u>United States v. Todd</u>, 627 F.3d 329, 333–34 (9th Cir. 2010) (holding that the evidence of the defendant's "established practice" allowed the jury reasonably to conclude that the defendant knew that "force, fraud, or coercion would be used" to cause the victims to engage in commercial sex). Accordingly, Plaintiff has plausibly alleged that Blanco had knowledge that he would use force, threats of force, or coercion against Plaintiff while in Jacksonville. <u>See</u> 18 U.S.C. § 1591(a).

As to the third element, Blanco argues that his alleged conduct does not constitute a commercial sex act. Blanco's Motion at 6. Specifically, Blanco contends that Plaintiff "has not alleged facts to suggest she was promised or

---

[9] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

received 'anything of value' as required to state a claim under the TVPA" because there "are no allegations that [he] made any promises to Plaintiff with regard to her employment or career in order for the alleged sex act to occur." Id. at 6–8. The Court is not convinced. Plaintiff's allegations in the Complaint suggest the following: Blanco personally selected her to travel with him to Jacksonville to work on the DFTS contract; Plaintiff, fearful of traveling with Blanco, accepted his offer because she was afraid of losing her job and the benefits that came with this opportunity; then, while in Jacksonville, Blanco allegedly assaulted Plaintiff. Simply put, "Blanco's alleged plan to use a business opportunity to lure [Plaintiff] into a vulnerable position where he could sexually assault her may raise a reasonable inference that the things of value were received on account of the sex act." Crowley, 649 F. Supp. 3d at 1231; see also Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) ("[T]he TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in consensual or, as alleged here, non-consensual sexual activity."). Thus, Plaintiff has sufficiently alleged that Blanco caused her to engage in a commercial sex act within the meaning of 18 U.S.C. § 1591(a).

In sum, the Court finds that Plaintiff has plausibly alleged that Blanco knowingly recruited, enticed, and transported her to Jacksonville knowing that means of force or fraud would be employed to cause her to engage in a

commercial sex act while there. <u>See</u> 18 U.S.C. § 1591. Accordingly, Plaintiff has plausibly alleged that Blanco is liable under the TVPRA as a perpetrator of sex trafficking.

### 2. Count III – Sexual Battery

In Count III, Plaintiff alleges that Blanco violated Florida law when he "sexually attacked [her] in his wife's home and fondled, touched, and groped her for his own sexual gratification." Complaint ¶ 330. Blanco argues that Count III should be dismissed because Plaintiff's claim is barred by the applicable statute of limitations. Blanco's Motion at 8. Plaintiff contends that the statute of limitations for this claim has been tolled. Complaint ¶ 335.

Under Florida law, "a statute of limitations period runs from the time the cause of action accrues" and a "cause of action accrues when the last element constituting the cause of action occurs." <u>City of Riviera Beach v. Reed</u>, 987 So. 2d 168, 170 (Fla. 4th DCA 2008) (internal citations and quotations omitted). However, Florida Statutes section 95.051 sets forth "an exclusive list of conditions that can 'toll' the running of the statute of limitations[.]" <u>Major League Baseball v. Morsani</u>, 790 So. 2d 1071, 1075 (Fla. 2001). Relevant here, section 95.051(1)–(a) provides that the "running of the time under any statute of limitations . . . is tolled by . . . [a]bsence from the state of the person to be sued." Additionally, the Eleventh Circuit has held that the statute of limitations is "an affirmative defense" that a plaintiff is "not required to negate" in the

complaint. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004), <u>abrogated on other grounds by</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). As such, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." <u>Id.</u> (quoting <u>Omar ex rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1251 (11th Cir. 2003)).

In the Motion, Blanco argues that the statute of limitations bars Count III because Plaintiff did not commence this action within four years of the alleged battery—January 12, 2018. Blanco's Motion at 10. However, Plaintiff alleges that "[a]fter sexually attacking [her] in Jacksonville, Florida, Juan Emilio Blanco fled the State of Florida and the United States and flew to El Salvador." Complaint ¶ 333. She further asserts that, "[u]pon information and belief, Juan Emilio Blanco remained in El Salvador, outside of the jurisdiction of the United States, or outside the state of Florida long enough to toll the statute of limitations[.]" <u>Id.</u> ¶ 335. Blanco denies these allegations. Blanco's Motion at 10. But, because the Court must accept Plaintiff's factual allegations as true when ruling on a motion to dismiss, the Court finds that Plaintiff has plausibly alleged that Blanco's absence from the state tolled the running of the statute of limitations. <u>See</u> Fla. Stat. section 95.051(1)–(a).

Blanco's arguments in support of dismissal are unavailing. Plaintiff has alleged a plausible claim that Blanco is liable under the TVPRA as a perpetrator

of sex trafficking. Plaintiff also has plausibly alleged that the statute of limitations for her state law sexual battery claim has been tolled. Accordingly, Blanco's Motion is due to be denied.

**IV. Conclusion**

For all of the foregoing reasons, the Court finds that Defendants' Motions to Dismiss are due to be denied.

Accordingly, it is

**ORDERED:**

1.  Defendant Crowley Maritime Corporation's Motion to Dismiss Plaintiff's Complaint (Doc. 16) is **DENIED**.

2.  Defendant Juan Emilio Blanco's Motion to Dismiss Plaintiff's Complaint (Doc. 19) is **DENIED**.

3.  Defendants shall respond to Plaintiff's Complaint on or before **April 19, 2024.**

**DONE AND ORDERED** in Jacksonville, Florida this 29th day of March, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Lc32
Copies to:
Counsel of Record